IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Roderick R. Ellsworth, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:12-2867-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Infor Global Solutions (Michigan), Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Infor Global Solutions (Michigan), Inc.'s ("Infor Global") motion to dismiss Roderick R. Ellsworth's ("Ellsworth") amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After thorough review, the court denies the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the amended complaint, Ellsworth was hired by Datastream in September 2004. (Am. Compl. ¶ 4, ECF No. 9.) In 2006, Infor Global acquired Datastream and Ellsworth continued to work for Infor Global until June 2012, when his employment was terminated. (Id. at ¶ 6.)

When Ellsworth began working for Infor Global in 2006, his responsibilities as Vice President – World-Wide Business Solutions Consulting, Enterprise Asset Management, centered around the support of sales and marketing of a product that enabled and assisted in the management, maintenance, and protection of assets. (Id. at ¶ 7.) Later that year, around October 2006, Ellsworth conceived an idea for a software program referred to as Global Asset

1

Sustainability ("GAS"), which enabled customers to reduce their energy costs by better managing their energy assets and consumption. (Id. at ¶¶ 8-9.) Ellsworth engaged in product development and helped develop an initial market for the product. (Id. at ¶ 36.) Ellsworth continued to work on GAS in addition to his previous responsibilities until May 2007, when Ellsworth resigned from his former position to work full-time on GAS. (Am. Compl. ¶ 17, ECF No. 9.)

Although Ellsworth accepted a new position with Infor Global, his compensation continued in accordance with the compensation plan already in place from his former position. (Pl. Mem. Opp'n Def. Mot. Dismiss 5, ECF No. 13.) Ellsworth, however, inquired in numerous emails from June 2007 through 2011 to various supervisors regarding his desire for additional compensation to reflect his work on GAS. (Id. at 4-7.) In one of his emails dated May 29, 2007, Ellsworth included a detailed position description (including his new responsibilities) and a proposal for compensation. (Id. at 3-4.) His compensation proposal included the following: "(a) 10% of license and support fees for five years; (b) 10% of continuing support fees for an indefinite period of time; and (c) 10% of the value of Asset Sustainability to be paid upon acquisition of the company, or upon termination of Ellsworth's employment." (Am. Compl. ¶ 19, ECF No. 9.)

Ellsworth allegedly received numerous positive responses to his proposal. (Pl. Mem. Opp'n Def. Mot. Dismiss 4-7, ECF No. 13.) For example, one supervisor told Ellsworth that he had his "commitment that we can revisit how we structure a compensation program around [GAS]." (Id. at 5.) A separate response Ellsworth received stated, "I am clear on your message and look forward to getting you acquainted with our option plan in the near future. While I

cannot make any guarantee, I will say you are on my short list." (Id.) Although no such plan was adopted, Ellsworth continued to work for Infor Global until he was terminated in June 2012. (Am. Compl. ¶ 6, ECF No. 9.) During his employment, Infor Global derived significant revenues from the license fees, support fees, and professional service fees associated with GAS. (Id. at ¶ 36.) As estimated by Ellsworth, the present value of GAS ranges from $44.46 million to an upper limit of $62.89 million. (Id. at ¶ 71.)

Ellsworth now brings the instant six-count amended complaint, alleging (1) breach of contract, (2) wrongful termination, (3) failure to pay wages due, (4) quantum meruit, (5) negligent misrepresentation, and (6) constructive fraud. Infor Global has filed a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The parties have fully briefed the issues and this matter is ripe for consideration.

## II. DISCUSSION OF THE LAW

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.

Although the court must accept the plaintiff's factual allegations as true, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citations omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### A. Breach of Contract

Ellsworth alleges breach of contract because Infor Global promised him "that he would receive additional compensation for his creation, development, and marketing of [GAS]." (Am. Compl. ¶ 41, ECF No. 9.) In response, Infor Global moves to dismiss the claim arguing that "[Ellsworth's] Amended Complaint simply alleges a breach of a promise to make a future compensation agreement," and is additionally "barred by the Statute of Frauds." (Def. Mem. Supp. Mot. Dismiss. 5-6, ECF No. 12.)

To recover for a breach of contract, Ellsworth must prove the existence of a contract, the breach of the contract, and damages caused by the breach. Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962). The required elements of a contract are an offer, acceptance, and valuable consideration. Sauner v. Pub. Serv. Auth. of S.C., 581 S.E.2d 161, 166 (S.C. 2003). "A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct." Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. Ct. App. 1997). Valuable consideration may consist of "some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by

the other." Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship, 503 S.E.2d 184, 186 (S.C. Ct. App. 1998). In order to have a binding contract, it is necessary that the parties to a contract have a meeting of the minds with regard "to all essential and material terms of the agreement." Player v. Chandler, 382 S.E.2d 891, 893 (S.C. 1989).

In the instant case, the amended complaint alleges that Ellsworth and his supervisors discussed both orally and via email a change in compensation for Ellsworth to account for his work on GAS. (Am. Compl. ¶¶ 17-36.) When Ellsworth accepted his new position working strictly on GAS, he was informed there was no guarantee that his former position would be available if the GAS project failed. (Id. at ¶ 17.) "In response, [Ellsworth] expressed his interest in pursuing [GAS], but further stated that he expected to be compensated for the value being given to [Infor Global] for the new product." (Id.) Upon instruction, Ellsworth drafted a proposal for compensation and a new position description defining his responsibilities in the new role. (Id. at ¶ 19.)

An email interaction between two contracting parties can suffice as a written contract of employment, thus satisfying the statute of frauds, S.C. Code Ann. § 32-3-10. See Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 777-78 (S.C. 2010). In Mathis, the email correspondence included contractual language such as, "[t]he guaranteed salary for the first year is $110,000," and "[g]oing forward, I will . . . insure that the second year will be $120,000 in earnings." Id. The court found this language to create an enforceable contract for a definite term. Here, Ellsworth alleges in the amended complaint that he was instructed by his supervisor to "put together a proposal for compensation and a new position description defining accountabilities and responsibilities for the new role." (Am. Compl. ¶ 17, ECF No. 9.) After

being so instructed, Ellsworth sent an email to his then supervisor defining in detail his envisioned role in his new position. (Id. at ¶ 19) Ellsworth also set forth a specific compensation plan explicitly proposing payment in the form of a percentage of the license and support fees derived from GAS, in addition to a percentage of the value of GAS to be paid upon termination of his employment. (Id.) Infor Global never denied Ellsworth's proposal, and continued to provide assurances to Ellsworth suggesting he would receive additional "compensation and/or merit bonuses for the value created by [GAS] . . . ." (Id. at ¶¶ 28, 30.) In reliance on these repeated assurances, Ellsworth continued working diligently for Infor Global, developing GAS into a multi-million dollar asset to the company until he was terminated in June 2012. (Id. at ¶¶ 36, 71.) Accordingly, Ellsworth alleges that Infor Global's failure to appropriately compensate him for his work pursuant to their recurring promises constituted a breach of contract.[1] The court finds that at this stage, Ellsworth's allegations supporting the breach of contract claim are sufficient to overcome Infor Global's motion to dismiss.

## B. Wrongful Termination

Ellsworth additionally alleges that Infor Global "eliminat[ed] [his] position in retaliation for his requests for compensation that had been promised to him," and thus, the company's actions were in violation of public policy. (Am. Compl. ¶ 84, ECF No. 9.) Infor Global moves to dismiss Ellsworth's claim on the basis that although "South Carolina courts recognize the

---

[1] In addition, Ellsworth alleges in the amended complaint that he fully performed his responsibilities pertaining to his work on GAS, which would nullify any statute of frauds violation. See Coker v. Richtex Corp., 200 S.E.2d 231, 232 (S.C. 1973) ("[C]omplete performance on the part of [the plaintiff] takes the oral contract out of the statute of frauds and makes [the defendant's] promise enforceable in spite of the fact that it could not be performed formed [sic] within a year.").

6

'public policy' exception to the at-will employment rule, [the state has] carefully limited the application of this cause of action." (Def. Mem. Supp. Mot. Dismiss 4, ECF No. 12.)

South Carolina is an at-will employment state. See Davis v. Orangeburg-Calhoun Law Enforcement Comm'n, 542 S.E.2d 755, 758 (S.C. Ct. App. 2001). "The doctrine dictates that employment for an indefinite term is terminable by either the employee or the employer for any reason or for no reason without incurring liability for wrongful discharge." Id. There is a public policy exception to this rule, however, which gives "an employee . . . recourse against an employer for termination in violation of public policy." Id.

"The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination was itself a violation of criminal law." Barron v. Labor Finders of S.C., 713 S.E.2d 634, 637 (S.C. 2011) (internal citations omitted). Although the public policy exception applies to situations where an employer requires an employee to violate the law or the reason for the termination itself is a violation of criminal law, "the public policy exception is not limited to these situations." Id.; see also Garner v. Morrison Knudsen Corp., 456 S.E.2d 907, 909-10 (S.C. 1995) (holding it inappropriate to grant a Rule 12(b)(6) motion to dismiss solely because the Supreme Court has not recognized a specific circumstance under the public policy exception).

Ellsworth argues that "[Infor Global] desired to terminate [his] employment as a result of [his] continued and frequent inquiries regarding compensation that had been negligently or fraudulently promised to him as a result of his creation of [GAS]." (Am. Compl. ¶ 80, ECF No. 9.) Ellsworth further asserts that "because the question is a novel issue, and because [he] has not yet had a chance through discovery to fully develop the facts supporting his claim, . . .

7

dismissal of this claim would not be appropriate in response to a Rule 12(b)(6) motion." (Pl. Mem. Opp'n Def. Mot. Dismiss 9-10, ECF No. 13.)

Infor Global did not require Ellsworth to violate the law and Ellsworth's termination itself was not a violation of criminal law. Thus, Ellsworth's wrongful termination claim does not fall under one of the two recognized public policy exceptions. However, South Carolina courts have declined to dismiss a wrongful termination claim at the motion to dismiss stage solely because it did not fit into one of the recognized exceptions. See Keiger v. Citgo, Coastal Petroleum, Inc., 482 S.E.2d 792, 794 (S.C. Ct. App. 1997) (holding that because the plaintiff's wrongful termination case presented a novel issue as to what is considered a violation of a clear mandate of public policy, it "should not have been dismissed pursuant to a 12(b)(6) motion."); see also Garner, 456 S.E.2d at 909-10 (S.C. 1995). Based on the foregoing, the court finds that at this stage, Ellsworth's allegations are sufficient to overcome Infor Global's motion to dismiss.

### C. Failure to Pay Wages Due

Ellsworth's claim for failure to pay wages due is pursuant to S.C. Code Ann. § 41-10-10 *et seq.*, payment of wages statute. Under S.C. Code Ann. § 41-10-50, "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days." Ellsworth argues that Infor Global owes him wages for the development of GAS, according to "the terms proposed by [Ellsworth] and accepted by [Infor Global]." (Am. Compl. ¶ 52, ECF No. 9.) Infor Global responds by arguing, "[Ellsworth] has not alleged facts that show that [Infor Global] accepted [Ellsworth's proposed terms]." (Def. Reply Supp. Mot. Dismiss 7, ECF No. 15.)

The purpose of the South Carolina Payment of Wages Act ("SCPWA") is "to protect employees from the unjustified and wilful retention of wages by the employer." Rice v. Multimedia, Inc., 456 S.E.2d 381, 383 (S.C. 1995). Infor Global asserts that it continued to pay Ellsworth under its compensation plan for his work, and although it made representations that it was working on a new plan for Ellsworth's future compensation, no set wages were ever determined. (Def. Reply Supp. Mot. Dismiss 7, ECF No. 15.) Ellsworth argues that he is owed wages due for his work on GAS before he was terminated.

In Lugo v. Spunkmeyer, the court denied the defendant's motion to dismiss the plaintiff's payment of wages claim in which the plaintiff claimed to be owed unpaid bonuses. No. 3-10-1809-MBS-JRM, 2012 WL 967939, at *4 (D.S.C. Feb. 29, 2012) (unpublished). The court held that "[i]n the light most favorable to [the plaintiff], she has alleged a plausible claim under the SCPWA[,]" as "[she] claims that [the defendant] refused to pay her compensation that she [was] due, consisting of overtime and bonus payment, and she repeatedly informed [the defendant] of the fact that she had not received such compensation." Id. Like the plaintiff in Lugo, Ellsworth argues that he is owed additional compensation for his work on GAS and repeatedly informed Infor Global that he was not being fully compensated. (Am. Compl. ¶¶ 49-56, ECF No. 9.) Ellsworth proposed a specific compensation plan to Infor Global for his work on GAS, and Infor Global provided him with repeated assurances "of compensation commensurate with the contributions he made through [GAS]." (Id. at ¶ 46.) Ellsworth never received any additional compensation, although he continued his work on GAS until he was terminated. Therefore, at this stage, the court finds that Ellsworth's allegations are sufficient to overcome Infor Global's motion to dismiss.

9

**D. Quantum Meruit**

Ellsworth asserts that he has an actionable claim of quantum meruit because "[he] provided valuable services to [Infor Global] in good faith[,]" and "[Infor Global] accepted and used [his] services realizing significant value." (Id. at ¶¶ 72-73.) Infor Global argues that Ellsworth's claim should be dismissed as the amount alleged to be owed is too speculative and the company was entitled to the benefits of his work. (Def. Mem. Supp. Mot. Dismiss 16, ECF No. 12.)

"Quantum meruit . . . is an equitable doctrine premised on the notion that one who benefits from the labor of another should not be unjustly enriched." Raymond, Colesar, Glaspy & Huss P.C. v. Allied Capital Corp., 961 F.2d 489, 490-91 (4th Cir. 1992). One may assert a claim of quantum meruit as an alternative remedy even though an express contract is found to exist. See Earthscapes Unlimited, Inc. v. Ulbrich, 703 S.E.2d 221, 225 (S.C. 2010). To establish a right to relief for quantum meruit, claimant must show, "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C., 577 S.E.2d 468, 473 (S.C. Ct. App. 2003).

Ellsworth argues that he should be compensated for his work on GAS in accordance with the structure of the proposed payment plan he submitted to his supervisors in multiple emails. (Pl. Mem. Opp'n Def. Mot. Dismiss 18, ECF No. 13.) Ellsworth further asserts that

> [t]he reason equity would demand that [he] be compensated for the value of the benefit conferred is because . . . in exchange for giving up his existing position of employment and for assuming a risky new position, the employee specifically

> negotiated a term of compensation which was, at the very least, impliedly accepted by his employer, while the employer also retained the benefit of the services.

(Id. at 19.)

Ellsworth claims that he conferred a benefit upon Infor Global in creating and marketing GAS, which is alleged to be a multi-million dollar software program. (Am. Compl. ¶ 71, ECF No. 9.) Further, the amount of damages requested by Ellsworth is not unreasonably speculative because the email as described in the amended complaint details his proposed payment structure, which "included a specific, quantifiable amount, measured as a portion of license fees derived from [GAS], as well as a percentage of [GAS]'s value at the time of his separation from the company." (Pl. Mem. Opp'n Def. Mot. Dismiss 18, ECF No. 13.) Moreover, when initially developing and marketing GAS, Ellsworth undertook different responsibilities, which were in addition to the tasks he was initially employed to perform. Thus, at this stage in the litigation, the court finds that Ellsworth's allegations are sufficient to state a claim for quantum meruit.

### E. Negligent Misrepresentation

Further, Ellsworth alleges a claim for negligent misrepresentation. A claim for negligent misrepresentation requires a plaintiff to prove the following six elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

Quail Hill, LLC v. County of Richland, 692 S.E.2d 499, 508 (S.C. 2010). "A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the

transaction." Gilliland v. Elmwood Properties, 391 S.E.2d 577, 580 (S.C. 1990) (quoting Winburn v. Ins. Co. of North America, 399 S.E.2d 142, 146 (S.C. Ct. App. 1985)). "The recovery of damages may be predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying on the misrepresentation." Id. (quoting Winburn, 399 S.E.2d at 146).

"These general rules have been applied . . . to support the recognition of a negligent misrepresentation claim where the misrepresented fact(s) induced the plaintiff to enter a contract or business transaction." Id. Infor Global argues that there is no authority under South Carolina law, however, specifically addressing whether a negligent misrepresentation claim is cognizable in the employer-employee context. Hand v. SunTrust Bank, Inc., No. 6:11-cv-00501-JMC, 2012 WL 3834859, at *3 (D.S.C. Sept. 4, 2012) (unpublished). Likewise, there is no South Carolina authority specifically precluding a negligent misrepresentation claim in the employer-employee context. See Finney v. Lincare, Inc., No. 2-11-CV-1400-DCN, 2012 WL 1533139, at **4-7 (D.S.C. May 1, 2012) (unpublished). Ellsworth has alleged false representations by Infor Global in assuring Ellsworth that he would receive additional compensation for his work on GAS, a pecuniary interest on behalf of Infor Global for making the representations, reliance by Ellsworth in continuing to work on GAS as a result of Infor Global's representation, and a pecuniary loss in failing to be compensated in accordance with his proposed compensation plan. (Am. Compl. ¶¶ 58-63, ECF No. 9.) Moreover, Infor Global repeatedly made such false assurances to Ellsworth over the course of nearly five years, and gave him "its commitment that [he] would receive a bonus, additional compensation, and/or an equity stake in Infor [Global]

once [GAS] was adopted by the market . . . ." (Id. at ¶ 58.)  Therefore, the court finds that at this stage, Ellsworth's allegations are sufficient to overcome Infor Global's motion to dismiss.

### F. Constructive Fraud

Ellsworth further alleges constructive fraud against Infor Global based on the same facts as those underlying his negligent misrepresentation claim.  To sustain a claim of fraud, all of the following elements must be proven:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

Armstrong v. Collins, 621 S.E.2d 368, 375 (S.C. Ct. App. 2005).  "To establish constructive fraud, all elements of actual fraud except the element of intent must be established." Id. (quoting Pitts v. Jackson Nat'l Life Ins. Co., 574 S.E.2d 502, 509 (S.C. Ct. App. 2002)). "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud while intent to deceive is an essential element of actual fraud."  Id. (quoting Ardis v. Cox, 431 S.E.2d 267, 269-70 (S.C. Ct. App. 1993)).

As previously stated, Ellsworth alleges that Infor Global knowingly made several false representations regarding material facts – namely, its intention to compensate him for the value it obtained through GAS – in order to appease his concerns and persuade him to continue progressing with his work.  (Am. Compl. ¶ 65, ECF No. 9.)  Ellsworth did not realize the falsity of Infor Global's representations, and he relied on its commitment to "get things marching in the right direction."  (Id. at ¶ 68)  Ellsworth claims he suffered a pecuniary injury as a result of Infor Global's failure to honor its alleged promises.  (Id.)  Based on the foregoing, the court finds that

at this stage, Ellsworth's allegations are sufficient to overcome Infor Global's motion to dismiss.

It is therefore

**ORDERED** that Infor Global's motion to dismiss, docket number 12, is denied.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                Senior United States District Judge

Greenville, South Carolina
December 20, 2012